# In the United States Court of Federal Claims

No. 06-933T

(Filed: December 13, 2011)

| | | |
|---|---|---|
| ******************************************* | * | |
| | * | |
| E. HAFFNER FOURNIER, et al., | * | |
| | * | |
| | * | |
| | * | |
| Plaintiffs, | * | Amcor; TEFRA; Partnership Item; Penalty Interest; Interlocutory Order; Reconsideration. |
| | * | |
| v. | * | |
| | * | |
| THE UNITED STATES, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| ******************************************* | * | |

*Thomas E. Redding*, Redding & Associates, P.C., Houston, Texas, for Plaintiffs.

*Christopher S. Dove*, with whom were *John A. DiCicco*, Principal Deputy Assistant Attorney General, *Steven I. Frahm*, Chief, and *Mary M. Abate*, Assistant Chief, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C., for Defendant.

OPINION AND ORDER

WHEELER, Judge.

This Amcor tax partnership case is before the Court on Plaintiffs' August 8, 2011 motion for reconsideration. Plaintiffs, E. Haffner Fournier, Joanne D. Fournier, Kevin P. Regan, Sharon M. Regan, Robert L. Sperling, Darlene J. Sperling, Jeffrey Struiksma, Cynthia Struiksma, and Joan Hearley, as trustee of the Hearley Family Trust and individually, were partners in tax shelters organized as limited partnerships, which American Agri-Corp and successor Amcor Capital Corporation ("Amcor") promoted and managed during the 1980s. On April 16, 2008, Judge Lawrence Block dismissed, for lack of jurisdiction, the claims of representative plaintiffs that the Internal Revenue Service ("IRS") untimely assessed back taxes and incorrectly assessed interest, including

penalty interest under the former 26 U.S.C. ("Internal Revenue Code" or "I.R.C.") § 6621(c) (repealed 1989). The Court of Appeals for the Federal Circuit affirmed Judge Block's ruling on March 5, 2010. The case is before the undersigned upon transfer from Judge Block. For the reasons explained below, the Court DENIES Plaintiffs' motion for reconsideration.

### Factual and Legal Background

During the 1980s, Amcor promoted agricultural investment partnerships, which it managed as general partner. Amcor designed financing arrangements for the partnerships, which were intended to generate interest expense deductions for the individual partners to be offset against ordinary income. If any taxes were later due, the taxes would be calculated at lower capital gains rates. See Prati v. United States ("Prati III"), 603 F.3d 1301, 1302 (Fed. Cir. 2010); Keener v. United States ("Keener II"), 551 F.3d 1358, 1360 (Fed. Cir. 2009); Prati v. United States ("Prati I"), 81 Fed. Cl. 422, 425 (2008); see also Pls.' Mot. (Aug. 8, 2011) Ex. 1 ("Behrens Affidavit"), at 3-4 ¶ 16, Docket No. 28-1. Mr. Frederick H. Behrens is the Chairman of Amcor and was the tax matters partner ("TMP") within the meaning of the Tax Equity and Fiscal Responsibility Act ("TEFRA"), § 402, 96 Stat. 324, 664 (1982) (current version at I.R.C. § 6231(a)(7) (2006)) for all of the partnerships applicable to Plaintiffs. Prati I, 81 Fed. Cl. at 426; Pls.' Mot. (Aug. 8, 2011), at 33, Docket No. 28; see also Behrens Affidavit, at 1 ¶¶ 4-5, Docket No. 28-1; Behrens Affidavit Attach. A, at 12, Docket No. 28-1A (listing 41 limited partnerships).

Under the TEFRA, partnerships file informational tax returns, reporting on any "'partnership item' . . . required to be taken into account for the partnership's taxable year." 96 Stat. at 663 (current version at I.R.C. § 6231(a)(3) (2006)); see also Prati I, 81 Fed. Cl. at 427; 26 CFR § 301.6231(a)(3)-1(b) (2011) (defining "partnership item"); IRS Form 1065 ("U.S. Return of Partnership Income"). With only limited exception, TEFRA deprives this Court and any other tribunal of jurisdiction over tax refund claims by individual partners when the claims are "attributable to partnership items." 96 Stat. at 668 (current version at I.R.C. § 7422(h) (2006)). Rather, the partnership's TMP may petition for pre-payment readjustment within 90 days of final notice from the IRS. Id. at 653 (current version at I.R.C. § 6226(a) (2006)).

In 1987, the IRS began to audit and investigate the Amcor partnerships as potential illegal tax shelters. Prati III, 603 F.3d at 1302; Prati I, 81 Fed. Cl. at 424. In 1990 and 1991, the IRS issued notices of final partnership administrative adjustment ("FPAA") to the limited partnerships, disallowing deductions for "sham transactions." Prati III, 603 F.3d at 1302; Prati I, 81 Fed. Cl. at 424; see also I.R.C. § 6223 (2006) (defining "FPAA"). The IRS also assessed interest against the individual partners, including penalty interest under the former I.R.C. § 6621(c). Prati III, 603 F.3d at 1303; see also I.R.C. §§ 6621(c)(2), (c)(3)(A)(v) (repealed 1989) (prescribing penalty interest

for "[s]ubstantial underpayment attributable to tax motivated transactions," including "any sham or fraudulent transaction").

## Procedural History

The procedural history of the Amcor tax partnership cases is quite complex. A brief summary is as follows.

Initially, non-TMP representatives of the various Amcor partnerships challenged the FPAAs in partnership-level proceedings at the U.S. Tax Court. Prati III, 603 F.3d at 1302. As those proceedings progressed, some partners chose to settle with the IRS in 1997, while others did not. See id. at 1303 (comparing the Pratis who chose to settle with the Deegans who did not). The partners in the present case did not settle. See Isler v. United States, No. 01-344T, Def.'s Mem. Ex. 1 (Jul. 17, 2007), Docket No. 127-1 (listing the partners who did or did not execute settlement agreements).

The settling partners paid their assessments in full and, in 1999, filed partner-level administrative adjustment requests ("AARs") with the IRS. Prati III, 603 F.3d at 1303. In 2001, the TMPs for the non-settling partners stipulated to non-settlement assessment terms with the IRS, thereby binding non-objecting partners to those terms under Tax Court Rule of Practice and Procedure 248(b)(4). Id.; Behrens Affidavit (Aug. 8, 2011), at 2-4 ¶¶ 13-18, 9-10 ¶¶ 17-21, Docket No. 28-1; see also Behrens Affidavit Attach. C, at 14-20, Docket No. 28-1C (the stipulation). The non-settling but bound partners also paid their assessments and filed partner-level AARs with the IRS. Prati III, 603 F.3d at 1303. Citing the jurisdictional bar of I.R.C. § 7422(h) (2006), the IRS ultimately disallowed both sets of AARs as *partner*-level refund claims impermissibly pertaining to the adjustment of *partnership*-level items. Id.

Thereafter, the partners began to file tax refund claims in this Court—129 claims in all. Id.; Prati I, 81 Fed. Cl. at 423.[1] Since many of the claims, including Plaintiffs' claims here, presented "virtually identical" factual allegations and sought refunds "based on the exact same legal grounds," the parties in 2003 selected three cases to serve as representative of those claims. Prati I, 81 Fed. Cl. at 423-24, 424 n.6; Pls.' Mot. (Aug. 8, 2011), at 3, Docket No. 28; see also Prati, No. 02-60T (case one); Scuteri v. United States, No. 01-358T (case two); Isler, No. 01-344T (case three). The parties selected Prati to litigate first, as the representative case on jurisdictional issues, and the various assigned judges stayed the other representative cases pending its disposition. Prati III, 603 F.3d at 1303; Prati v. United States ("Prati II"), 82 Fed. Cl. 373, 374 (2008); Prati I, 81 Fed. Cl. at 425. In 2005, Judge Francis Allegra of this Court lifted the stay in Keener, one of the representative cases. See No. 03-2028T, Order (Mar. 10, 2005), Docket No. 8.

---

[1] The same counsel represented all of the Amcor partners, including Plaintiffs here. Martin v. United States, ___ Fed. Cl. ___, 2011 WL 6035557, at *1 (Dec. 5, 2011).

The Court reassigned Prati, Isler, and Scuteri to Judge Block in 2006, and implemented procedures to transfer pending cases and to assign future cases involving the Amcor partnerships to him, ultimately 124 out of the 129 cases. Prati I, 81 Fed. Cl. at 423; Pls.' Mot. (Aug. 8, 2011), at 4-5, Docket No. 28. In total, Judge Block presided over 77 representative cases (including Prati, Isler, and Scuteri). Prati I, 81 Fed. Cl. at 423-24, 424 n.2. He did not formally consolidate them. Prati II, 82 Fed. Cl. at 374 ("[T]hese cases were treated together—although never formally consolidated or combined—for the limited purpose of addressing the common legal issues in the pending motions.").

Judge Allegra declined to transfer Keener. Pls.' Mot. (Aug. 8, 2011), at 4, Docket No. 28. In 2007, agreeing with the IRS, Judge Allegra dismissed the partners' claims pursuant to I.R.C. § 7422(h) (2006). See Keener v. United States ("Keener I"), 76 Fed. Cl. 455 (2007).

As in Keener, the partners in Prati challenged (i) the back taxes, as not timely assessed under the I.R.C. § 6229 (2006) statute of limitations; (ii) the penalty interest, as not warranted because any underpayments were not the product of tax motivated transactions; and (iii) the Secretary of the Treasury's failure to abate any of the interest for "unreasonable error or delay" under I.R.C. §§ 6404(e)(1), (h) (2006), as an abuse of discretion. Keener II, 551 F.3d at 1361; Prati I, 81 Fed. Cl. at 424-25, 439-40. Judge Block dismissed the claims for lack of subject matter jurisdiction without reaching the merits. Judge Block relied upon I.R.C. § 7422(h) (2006) and Hinck v. United States, 550 U.S. 501, 503 (2007) (holding the Tax Court has exclusive jurisdiction over the abatement issue). Prati III, 603 F.3d at 1303; Prati I, 81 Fed. Cl. at 440. In the same opinion, filed on April 16, 2008, Judge Block dismissed the 76 other representative cases, relying both on his own analysis (in Prati I) and Judge Allegra's comparable analysis in Keener I, which was on appeal before the Federal Circuit at that time. Prati III, 603 F.3d at 1303-04; see also Prati I, 81 Fed. Cl. at 440.

The partners moved for reconsideration on April 30, 2008, requesting Judge Block to vacate all 77 judgments and either (i) stay the cases pending the resolution of Keener II, by which they agreed to be bound; or (ii) consolidate the cases under Prati and re-enter judgment, allowing for a single appeal. Prati III, 603 F.3d at 1304; Prati II, 82 Fed. Cl. at 375 (internal citation omitted). Judge Block denied the partners' motion on July 1, 2008, vacating just 15 of the judgments, including Plaintiffs' here, "for the limited purpose of permitting plaintiffs to pursue any unresolved case-specific claims that may still exist." Prati II, 82 Fed. Cl. at 378-79, 379 n.4; see also Prati III, 603 F.3d at 1304 n.1. The partners in the instant matter, however, no longer have any case-specific claims. See Notice of Partial Dismissal (Aug. 8, 2011), Docket No. 27 (notifying the Court of the voluntary dismissal by Plaintiffs, Kevin P. Regan and Sharon M. Regan, of their overstated adjustment claim); Isler, No. 01-344T, Joint Status Report (Oct. 24, 2008), at 5-6 ¶ 12, Docket No. 137 (alleging a "single" case-specific claim for overstated adjustment by Plaintiffs, Kevin P. Regan and Sharon M. Regan).

Partners from 55 of the judgments represented in Prati I appealed (including the Pratis and the Deegans).  However, on October 22, 2008, the Federal Circuit stayed those appeals pending its disposition of Keener II.  See, e.g., Deegan, No. 2008-5129, Entry Nos. 8-9; Prati, No. 2008-5117, Entry Nos. 7-8.  Likewise, on November 21, 2008, Judge Block stayed the 15 cases with case-specific claims pending the outcomes of Keener II and Prati III.  See Isler v. United States, No. 01-344T, Order (Nov. 21, 2008), Docket No. 141.

The Federal Circuit issued Keener II on January 8, 2009, affirming Judge Allegra's dismissal of the partners' claims.  See 551 F.3d at 1367.  On June 17, 2009, the Federal Circuit lifted the stays in Prati (representative of the settling partners) and Deegan (representative of the non-settling partners), as companion cases "to permit the appellants to raise their arguments in their briefs why this court's decision in Keener does not control."  Deegan, No. 2008-5129, Entry No. 25; Prati, No. 2008-5117, Entry No. 23.  Despite this second opportunity for the partners, the Federal Circuit issued Prati III on May 5, 2010, affirming Judge Block's decision from Prati I.  See Prati III, 603 F.3d at 1306-09.  The Federal Circuit denied the Prati III partners' petition for rehearing en banc on August 3, 2010 and, on December 9, 2010, summarily affirmed the 53 other Prati I judgments on appeal.  Keefe v. United States, 407 F. App'x 420 (Fed. Cir. 2010) (non-precedential).  Earlier this year, the Supreme Court denied the partners' petitions for certiorari.  See Keefe, ___ U.S. ___, 131 S. Ct. 2119 (2011); Prati, ___ U.S. ___, 131 S. Ct. 940 (2011); Deegan, ___ U.S. ___, 131 S. Ct. 937 (2011).

On February 2, 2011, Plaintiffs, among the other remaining partners, moved to transfer their case to Judge Charles Lettow of this Court to allow for consolidation into Epps v. United States, No. 06-615T.  Pls.' Mot., Docket No. 12; Isler, No. 01-344T, Joint Status Report (Jan. 31, 2011), Docket No. 154 (suggesting divergent procedural courses to resolve cases with case-specific claims).  Judge Block denied the partners' motions on March 29, 2011.  Order, Docket No. 13; see also Isler, No. 01-344T, Order (Mar. 29, 2011), Docket No. 161 (denying motion to transfer in lead remaining case).

The Court reassigned the various remaining cases to different judges on March 30, 2011, Order, Docket No. 14 (finding transfer to be "necessary for the efficient administration of justice"), reassigning the instant matter to the undersigned, Notice of Reassignment (Mar. 31, 2011), Docket No. 15.  On August 8, 2011, Plaintiffs moved for reconsideration of Prati I as specifically applied to their statute of limitations, penalty interest, and abatement claims.  Pls.' Mot., at 1, Docket No. 28; see also Rule of the Court ("RCFC") 54(b) (reconsideration of interlocutory orders); RCFC 59(a) (reconsideration in general); RCFCs 59(e) & 60(b) (reconsideration of final judgments).  This matter is fully briefed, and the Court heard oral argument on November 2, 2011.

5

Discussion[2]

The primary issue Plaintiffs raise in their motion is whether the Court should reconsider Prati I. Pls.' Mem. (Sep. 28, 2011), at 6-9, Docket No. 31; Pls.' Mot. (Aug. 8, 2011), at 2, 18-40, Docket No. 28. Additionally, Plaintiffs present two related questions which the Court easily can resolve: (i) whether by vacating the 15 case-specific Prati I judgments, Prati II reinstated Plaintiffs' limitations, penalty interest, and abatement claims, Pls.' Mem. (Sep. 28, 2011), at 1-2, 4, 7-8, Docket No. 31; Pls.' Mot. (Aug. 8, 2011), at 1-2, Docket No. 28; and (ii) whether Prati I is representative of Plaintiffs' claims since the Court never formally consolidated the matters, Pls.' Mem. (Sep. 28, 2011), at 2-6, Docket No. 31; Pls.' Mot. (Aug. 8, 2011), at 2, 12-17, Docket No. 28. Neither of these latter two propositions has merit.

A. Prati II Only Reinstated Plaintiffs' Case-Specific Claims.

Prati II only vacated Plaintiffs' judgments to allow for them to litigate *case-specific* claims. 82 Fed. Cl. at 379. After all, the parties selected Prati as the representative case by which their common TEFRA jurisdictional questions would be presented in the first place. Id. at 374 ("At the May 2, 2007 oral argument . . . the parties requested that the Court first resolve the jurisdictional issues arising in the AMCOR tax partnership cases and that for such a purpose Prati should serve as a representative case." (citing Isler, No. 01-344T, Tr., at 173-79, Docket No. 122)). Judge Block already ruled on the TEFRA jurisdictional questions in Prati I, 81 Fed. Cl. at 440, and the Federal Circuit affirmed that ruling in Prati III, 603 F.3d at 1309; see also Keener II, 551 F.3d at 1367. Therefore, Plaintiffs may litigate only case-specific questions, not TEFRA jurisdictional questions, at this juncture. However, Plaintiffs have not presented any case-specific questions. See Notice of Partial Dismissal (Aug. 8, 2011), Docket No. 27; Isler, No. 01-344T, Joint Status Report (Oct. 24, 2008), at 5-6 ¶ 12, Docket No. 137.

B. Prati I Continues to Control Plaintiffs' Other Claims.

As noted in the preceding paragraph, Prati I does not control the Amcor partners' case-specific claims. Prati II, 82 Fed. Cl. at 378-79, 379 n.4. However, as Judge Block reiterated on March 29, 2011, Prati I otherwise *is* the governing law in each of the vacated cases. See Isler, No. 01-344T, Order, at 1-2, Docket No. 161. Indeed, Judge Block already had established that point in Prati II, both by word, 82 Fed. Cl. at 379 ("The Court is not reconsidering its opinion in Prati—the opinion remains the law in each case."), and by deed, id. ("The Motion for Reconsideration is *DENIED* in each of the 77 cases covered by the Prati opinion." (emphasis in original)); see also Isler, No. 01-344T, Order, at 3, Docket No. 161. Accordingly, Prati I continues to control Plaintiffs' claims.

---

[2] The Court concurs with the recent opinions in Boland v. United States, No. 06-859T (Nov. 17, 2011) (Futey, J.) and Martin v. United States, 2011 WL 6035557 (Dec. 5, 2011) (Damich, J.), denying reconsideration in related cases.

Furthermore, consolidation was not necessary because <u>Prati I</u> handily disposed of the common TEFRA jurisdictional questions. <u>See</u> 81 Fed. Cl. at 440. By definition, any surviving case-specific claims would not be suitable for consolidation. <u>Isler</u>, No. 01-344T, Order, at 3, Docket No. 161.

    C. <u>Plaintiffs Do Not Meet Their Burden for Reconsideration of Prati I.</u>

        1. <u>Standard of Review</u>

Where an action involves multiple parties:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

RCFC 54(b). Here, because <u>Prati II</u> led to 15 of the 77 <u>Prati I</u> judgments being vacated, the effect of <u>Prati I</u>, as specifically applied to Plaintiffs, is best characterized as interlocutory. Thus, RCFC 54(b) governs rather than RCFCs 59(e) and 60(b). <u>See</u> <u>Wolfchild v. United States</u>, 68 Fed. Cl. 779, 784 (2005).

Nevertheless, a motion for reconsideration under RCFC 59(a) "is addressed to the court's discretion." <u>Fru-Con Constr. Corp. v. United States</u>, 44 Fed. Cl. 298, 300 (1999). It "must be supported 'by a showing of extraordinary circumstances which justify relief.'" <u>Caldwell v. United States</u>, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (quoting <u>Fru-Con Constr.</u>, 44 Fed. Cl. at 300). "[T]he movant must show: (1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice." <u>Fru-Con Constr.</u>, 44 Fed. Cl. at 301. "Manifest injustice" must be "clearly apparent or obvious." <u>Ammex, Inc. v. United States</u>, 52 Fed. Cl. 555, 557 (2002) (internal citation omitted). "Because the litigation process rests on the assumption that both parties present their case once, to their best advantage, a strong public policy precludes a reconsideration motion based on evidence that was readily available at the time the original motion was heard." <u>Fru-Con Constr.</u>, 44 Fed. Cl. at 301 (internal citation and quotation omitted).

Here, Plaintiffs have failed to show "extraordinary circumstances" within the meaning of any of the three <u>Fru-Con Construction</u> prongs. Despite over 50 pages of briefing, Plaintiffs have failed to provide the Court with a concise and clearly-labeled recitation of arguments for reconsideration that are distinct from issues already addressed

in Prati, Keener, and Deegan.  Nevertheless, the Court will address Plaintiffs' three most salient arguments for reconsideration, explaining why each cannot prevail.

> 2. Applying Prati I to Plaintiffs Despite the Settling/Non-Settling Partner Distinction Does Not Create "Clearly Apparent or Obvious" Injustice.

Plaintiffs argue that because the Prati partners settled and Plaintiffs did not, Plaintiffs' claims are sufficiently distinct to warrant additional discovery.  Pls.' Mem. (Sep. 28, 2011), at 1-3, 6-8, Docket No. 31; Pls.' Mot. (Aug. 8, 2011), at 3-4, 7-8, 10, 18-21, 27, 31-33, Docket No. 28.  However, Plaintiffs' counsel made this same settling/non-settling partner distinction in both Prati III and Keefe.  Indeed, in Keefe, the Federal Circuit summarily affirmed Judge Block's judgments against the overwhelming majority of the non-vacated Prati I partners.  407 F. App'x at 420 ("Summary affirmance of a case is appropriate when the position of one party is so clearly correct as a matter of law that no substantial question regarding the outcome of the appeal exists." (internal quotation omitted)).  While Keefe is not precedential, it is particularly persuasive in light of the three Prati opinions, the two Keener opinions, and Judge Block's Isler order, with which it is entirely consistent.  The settling/non-settling partner distinction creates no "manifest injustice" and certainly is not so extraordinary as to justify reconsideration of Prati I.

> 3. The Affidavit of Frederick H. Behrens Is Neither "Extraordinary" Nor "Previously Unavailable."

Plaintiffs submit the affidavit of Mr. Behrens as previously unavailable evidence. Pls.' Mem. (Sep. 28, 2011), at 8, Docket No. 31; Pls.' Mot. (Aug. 8, 2011), at 13-17, 20, 27, 31-33, Docket No. 28; see also Behrens Affidavit (Aug. 8, 2011), at 1-4, Docket No. 28-1.  However, as the longtime Chairman of Amcor and the TMP for all of the Amcor partnerships applicable to Plaintiffs, Mr. Behrens's affidavit was "readily available" at earlier stages in this litigation.  Yet, he did not submit an affidavit until January 11, 2011. See Behrens Affidavit (Aug. 8, 2011), at 4, Docket No. 28-1.  Moreover and regardless, the self-serving affidavit of the Chairman of a tax shelter promoter would not be "extraordinary" within the meaning of Caldwell.

> 4. Prati III and Keener II Remain Controlling Authority on This Court and This Case.

Plaintiffs point the Court to multiple alternative authorities, attempting to distract from the controlling Prati III and Keener II opinions.  To guide the Court's analysis, the following table is helpful:

| **Case** | **Date Decided** | **Forum** | **Statute** |
|---|---|---|---|
| *Keener II* | January 8, 2009 | Federal Circuit | I.R.C. |
| *Duffie* | March 10. 2010 | Fifth Circuit | I.R.C. |
| *Jade Trading* | March 23, 2010 | Federal Circuit | I.R.C. |
| *Prati III* | May 5, 2010 | Federal Circuit | I.R.C. |
| *Stobie Creek* | June 11, 2010 | Federal Circuit | I.R.C. |
| *Keefe* | December 9, 2010 | Federal Circuit | I.R.C. |
| *Henderson* | March 1, 2011 | Supreme Court | Veterans' Judicial Review Act |
| *Tohono O'odham* | April 26, 2011 | Supreme Court | 28 U.S.C. § 1500 |

a. Plaintiffs' Reliance on Jade Trading and Duffie Impermissibly Suggests This Court Should Decline to Follow Binding Prati III Authority.

In place of Prati III, Plaintiffs urge the Court to rely on two alternative opinions, (i) Jade Trading, LLC ex rel. Ervin v. United States, 598 F.3d 1372 (Fed. Cir. 2010); and (ii) Duffie v. United States, 600 F.3d 362 (5th Cir. 2010) (Stewart, J.), that were decided *before* Prati III. Pls.' Mem. (Sep. 28, 2011), at 8-9, Docket No. 31; Pls.' Mot. (Aug. 8, 2011), at 17-19, 26-27, 29-33, 35, 38-40, Docket No. 28. However, Plaintiffs' counsel already had the opportunity to brief the Prati III appellate panel on Jade Trading and Duffie, and the Federal Circuit was not persuaded. Plaintiffs' counsel also pursued or could have pursued this argument in the non-vacated Prati partners' many unsuccessful petitions for rehearing en banc and certiorari. See Supplement to Pet. for Writs of Cert., Keefe, 131 S. Ct. 2119 (Apr. 5, 2011) (No. 11-1105), 2011 WL 1356673; Pet. for Writs of Cert., Keefe, 131 S. Ct. 2119 (Mar. 8, 2011) (No. 10-1105), 2011 WL 836712; Pet. for Writ of Cert., Prati, 131 S. Ct. 940 (Oct. 29, 2010) (No. 10-610), 2010 WL 4478417; Pet. for Writ of Cert., Deegan, 131 S. Ct. 937 (Oct. 29, 2010) (No. 10-602), 2010 WL 4381992; Pet. for Reh'g En Banc, Deegan, 603 F.3d 1301 (Jun. 21, 2010) (No. 2008-5129), 2010 WL 2783063; Pet. for Reh'g En Banc, Prati, 603 F.3d 1301 (Jun. 21, 2010) (No. 2008-5117), 2010 WL 2783062. While failure to procure rehearing en banc or certiorari is not "rejection[] on the merits," Pls.' Mem. (Sep. 28, 2011), at 9-10, Docket No. 31 (collecting citations), it is highly suggestive in light of this matter's rich but consistent procedural history. The Court must follow Prati III.

9

Furthermore, Keener II pre-dated Jade Trading, thereby vitiating the authority of Jade Trading under Plaintiffs' reasoning. See Pls.' Mot. (Aug. 8, 2011), at 35-36, Docket No. 28 (arguing that Jade Trading forecloses Prati III because the Federal Circuit decided it first). Finally, while Duffie presents a compelling framework grounded in res judicata principles for bridging partnership and partner-level proceedings under the TEFRA, Federal Circuit precedent, not Fifth Circuit precedent, binds this Court. To the extent that clarification of inconsistency in Federal Circuit doctrine, or adoption of competing Fifth Circuit doctrine, would be salutary, the proper vehicle in which to litigate those issues would be an appeal to the Federal Circuit.

### b. Stobie Creek, Henderson, and Tohono O'odham Are Inapposite.

Plaintiffs point the Court to (i) Stobie Creek Invs. LLC v. United States, 608 F.3d 1366 (Fed. Cir. 2010); (ii) Henderson ex rel. Henderson v. Shinseki, ___ U.S. ___, 131 S. Ct. 1197 (2011); and (iii) United States v. Tohono O'odham Nation, ___ U.S. ___, 131 S. Ct. 1723 (2011), to show "that an intervening change in the controlling law has occurred." Pls.' Mem. (Sep. 28, 2011), at 8-9, Docket No. 31; Pls.' Mot. (Aug. 8, 2011), at 13, 19, 27, 36-37, 39-40, Docket No. 28. This argument is not convincing either.

In Stobie Creek, the partnership rather than the individual partners brought suit, 608 F.3d at 1380-81, and the proceedings involved a different tax shelter (the "Son of BOSS" shelter), id. at 1368, 1369 n.1. Stobie Creek also preceded Keefe, where the Federal Circuit summarily affirmed the judgments against the non-vacated Prati I partners. Keefe, 407 F. App'x at 420-21. Thus, Stobie Creek is neither "intervening" nor "controlling."

Henderson implicated jurisdiction within the context of an entirely separate statutory scheme, the Veterans' Judicial Review Act (Title 38) rather than the Internal Revenue Code (Title 26). As Justice Alito explained, "Congress' longstanding solicitude for veterans is plainly reflected in the VJRA and in subsequent laws that place a thumb on the scale in the veteran's favor in the course of administrative and judicial review of VA decisions." 131 S. Ct. at 1199. Surely, Congress had no comparable "solicitude" for participants in tax shelters. Accord Martin, 2011 WL 6035557, at *9.

Similarly, Tohono O'odham addressed 28 U.S.C. § 1500 (2006), a unique federal jurisdictional statute with almost no connection to the partnership tax questions at issue. At most, the jurisdictional pertinence of Tohono O'odham is grounded in wholly non-extraordinary dicta, see 131 S. Ct. at 1728-30, beyond the purview of this trial court to interpose in the face of direct controlling authority, Accord Boland, No. 06-859T, at 10.

Conclusion

For the foregoing reasons, Plaintiffs' motion for reconsideration is DENIED. Since Prati I continues to govern Plaintiffs' statute of limitations, penalty interest, and abatement claims, and Plaintiffs have failed to articulate any case-specific claims cognizable under the clear language of Prati II, the Court hereby instructs the Clerk of Court to enter final judgment for Defendant and to dismiss this action accordingly. No costs.

IT IS SO ORDERED.

                                                s/Thomas C. Wheeler
                                                THOMAS C. WHEELER
                                                Judge